The judgment of the Court of Claims was reversed by the Supreme Court March 26, 1945,
Mr. Justice Jackson
delivering the opinion.
A summary of the Court’s decision is as follows:
1. The interest which a riparian owner, operating a hydroelectric plant on an artificial channel between a nonnavigable and a navigable stream, has in having its tail waters flow off unobstructed into the navigable stream, so as to enable it to maintain its power head, is not such a legal right as to require compensation, as for a “taking,” upon its impairment by the raising of the high-water level of the navigable stream by a Government dam erected downstream to improve navigation resulting in impounding waters at a higher level at the end of the plant’s discharge lines.
2. The Fifth Amendment requiring just compensation for the taking of private property for public use does not undertake to socialize all losses, but only those which result from a “taking” of “property,” no compensation being awarded for damage from other causes except by Act of Congress.
3. Only such economic interests as have the law back of them may properly be called “property rights.”
4. Although the right of ownership in land may carry with it the legal right to enjoy some benefits from adjacent waters, this does not mean that an abstract and absolute property right in water, good against all the world, hovers over the shore land.
5. Under Wisconsin law, the shore owner has title to the bed of a navigable stream.
6. A riparian owner on a navigable stream who, by utilizing an artificial channel carrying into the navigable *798 stream the waters of a parallel nonnavigable stream, creates an artificial water level for the purpose of a hydroelectrical plant the tail waters from which were discharged into the navigable stream, cannot, in aid of his position as riparian owner on the navigable stream, claim rights also as riparian owner of the nonnavigable stream, where its property thereon is riparian only to the artificial channel.
7. Equality of right between riparian owners is the essence of water law, each owner having an equal right to make a reasonable use of the waters of the stream, subject to the equal right of the other owners likewise to make a reasonable use.
8. Riparian owners, on nonnavigable streams are entitled to their natural flow, subject only to a reasonable riparian use which must not substantially diminish their quantity or impair their quality.
9. While riparian owners on navigable streams have the same rights to be free from interferences of other riparian owners as on nonnavigable streams, all such riparian interests are subject to the dominant public interest in navigation. United States v. Cress, 243 U. S. 316, distinguished.
10. A riparian owner has no right of ownership, Avhich may be asserted by him as against an improvement of navigation authorized by Congress, in the difference between the natural level of a navigable stream and an artificial level of water impounded by him.
11. Lands below the high-water mark on a navigable stream are always subject to a dominant servitude in the interest of navigation, the exercise of which calls for no compensation to the riparian owner.
12. The rights existing between riparian owners are not the measure of their rights as against the Government in the improvement of navigation, in which case private interests must give way to a superior right.
13. Damage suffered by riparian owners as the result of operations of the Government in aid of navigation is not compensable under the Fifth Amendment unless there has been an actual taking of property;
14. Damages cannot be recovered'f or injury to abutting property resulting from a change of grade authorized by law, where there is no physical injury to the property itself.
Mr. Justice Reed concurred in the result “on the ground that the United States has not taken property of the respondent.”
*799 Mr. Justice Roberts filed a dissenting opinion, bolding that the judgment of the Court of Claims should be affirmed, in which Mr. Chief Justice Stone concurred.